*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2024 UT 30**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JUSTIN NELSON,
*Appellee,*

*v.*

ASHLEY PHILLIPS *et al.,*[*]
*Appellants.*

No. 20230025
Heard March 4, 2024
Filed August 8, 2024

On Appeal of Interlocutory Orders

Fifth District, Washington County
The Honorable Jeffrey C. Wilcox
No. 210500804

Attorneys:

F. Kevin Bond, Kevin B. Call, John Huber,
Lauren E.H. DiFrancesco, Alexander Baker, Salt Lake City,
for appellee

William E. Frazier, Wil S. Bangerter, St. George, for appellants
Traci Phillips, Ashley Phillips, Leanne Daly, and Marco Majors

Ryan B. Bell, Shelby Jaye Hughes, Salt Lake City, for appellant
Kristin Breinholt

Robert L. Janicki, Matthew A. Jones, Sandy, for appellant
Kim Cerchiai

Rafael A. Seminario, Salt Lake City, for appellant Nancy Morgan

Wayne K. Caldwell, Wayman M. Stodart, Logan, for appellant
Amanda Jean Seymore

---

[*] Additional Appellants: Traci Phillips, Kristen Breinholt; Kim Cerchiai, Leanne Daly, Marco Majors, Nancy Morgan, and Amanda Jean Seymore.

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1    Justin Nelson has brought an action against his former mother-in-law, Traci Phillips, former sister-in-law, Ashley Phillips, and friends and family of his deceased wife, Tiffani Nelson. Justin alleges that Traci and Ashley conspired with the other defendants (some of whom are also appellants) to destroy his reputation by publicly suggesting that he was responsible for Tiffani's death. None of the appellants are Utah residents, and each appellant moved to dismiss Justin's complaint for lack of personal jurisdiction.

¶2    Each appellant contradicted, under oath, the allegations Justin included in his complaint that supported the exercise of jurisdiction over them. Justin opted not to put forward evidence of his own to counter the evidence appellants presented to the district court. Justin instead relied on the allegations in his complaint and argued that the district court could assert jurisdiction over the appellants if it accepted his allegations as true and employed the conspiracy theory of jurisdiction.

¶3    The district court denied the motions to dismiss. The court concluded that Justin had sufficiently alleged facts that, if proven, would demonstrate that the appellants had conspired to defame him. The court reasoned that this was a sufficient basis to assert personal jurisdiction over all the appellants other than Traci and Ashley. As for Traci and Ashley, the court concluded it did not need to look to conspiracy jurisdiction because it reasoned that each of them had personal contacts with Utah sufficient to allow the court to exercise specific personal jurisdiction over them.

¶4    Appellants petitioned for interlocutory review, asking this court to assess whether the district court erred when it concluded that it could exercise jurisdiction using the conspiracy theory. Traci and Ashley also sought interlocutory review on that basis, and only

on that basis, even though the court had not reached the issue with respect to them.

¶5    The district court erred with respect to all appellants other than Traci and Ashley. Justin failed to meet his burden of supporting his allegations with evidence—a burden that appellants triggered when they offered sworn testimony to rebut the jurisdictional assertions Justin pleaded in his complaint. We therefore reverse the denial of the motions to dismiss filed by all appellants other than Traci and Ashley. We dismiss the petitions for interlocutory review Traci and Ashley filed as improvidently granted and offer no opinion on the district court's exercise of jurisdiction over them.

## BACKGROUND

¶6    Justin and Tiffani were a married couple who lived in Washington County, Utah. Justin filed to divorce Tiffani in February 2021. Tiffani took her life in August of that year.

¶7    Tiffani's funeral was held in Arizona. Justin did not attend the service. But Justin apparently has some knowledge about what occurred there. In his complaint, Justin alleges "[u]pon information and belief" that, at the funeral, appellants Traci Phillips, Ashley Phillips, Kristin Breinholt, Kim Cerchiai, Leanne Daly, Marco Majors, and Nancy Morgan "met and discussed their mutual intention to damage" Justin's "reputation by publicizing unfounded accusations that he had committed domestic violence" against Tiffani and was responsible for her death.[1]

---

[1] "Information and belief" is a legal term of art indicating that the allegation or assertion is "based on secondhand information that the declarant believes to be true." *Information and Belief, On*, BLACK'S LAW DICTIONARY (12th ed 2024). The Third Circuit Court of Appeals has described the phrase as "a lawyerly way of saying that [a party] does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377, 387 (3d Cir. 2020).

¶8 All the appellants filed motions to dismiss for lack of personal jurisdiction.[2] As we detail below, each appellant supported his or her motion with sworn testimony that he or she was not a Utah resident and had only limited contacts with the State. Justin opposed the motions but offered no evidence to counter the appellants' declarations.[3]

## I. Traci Phillips

¶9 Justin alleged that Traci defamed him while she was in Utah. He further alleged that when Traci was outside the State, she made defamatory statements about him that were directed at Utah residents with the intent to harm him. He also alleged that Traci had engaged in a conspiracy to defame him with people both inside and outside the State.

¶10 For example, Justin alleged that Traci made defamatory remarks about him in Utah when she interacted with Washington County police officers and Tiffani's former landlord. Justin claimed that Traci made several defamatory social media posts and repeatedly commented on posts to create the impression that Justin had "committed domestic violence against" Tiffani and "was responsible for her death."

¶11 Justin also alleged that "[u]pon information and belief," Traci met with other defendants at Tiffani's funeral and "discussed their mutual intention to damage" Justin's reputation "by publicizing unfounded accusations that he had committed

---

[2] We note that Traci, Ashley, Breinholt, Majors, and Morgan moved to dismiss with prejudice, while Seymore and Daly sought dismissal without prejudice. Cerchiai was unclear about the precise relief she wanted from the court.

[3] Justin's opposition briefing requested jurisdictional discovery in the event the district court "determined [his complaint] not to be sufficient for the court to assert personal jurisdiction." Justin "renew[ed] the . . . request for jurisdictional discovery" during the motion hearings. After the court took the motions under advisement, it denied Justin's discovery request. But any complaint Justin might have had about that (at least with respect to the appellants) became academic once the district court denied the motions to dismiss.

domestic violence against" Tiffani and "was responsible for her death." Justin asserted that Traci "reached an explicit or implicit meeting of the minds" with the defendants—specifically calling out all the appellants but Daly and Majors—"to defame [Justin] and place him in a false light and cause him emotional distress by publicizing unfounded accusations" against him.

¶12   Traci attached a declaration to her motion to dismiss. Traci asserts, under oath, that she is a citizen and resident of Arizona and that she has never been a citizen or resident of Utah. Traci states that she "did not 'combine' or meet with any other person or group of people at Tiffani's funeral to discuss a mutual intention to damage Justin's reputation or to publicize accusations that he had committed domestic violence against Tiffani or that he was responsible for Tiffani's death." Traci also asserts that she "did not reach 'an explicit or implicit meeting of the minds' with any other person . . . to defame Justin, place him in a false light, or cause him emotional distress by publicizing accusations that he had committed domestic violence against Tiffani or that he was responsible for her death."

¶13   Justin opposed Traci's motion but did not provide a sworn declaration, or any other evidence, of his own.

## II. Ashley Phillips

¶14   Justin's complaint alleged that, like her mother, Ashley defamed Justin both while she was physically present in Utah and while she was outside the State. Justin also alleged that Ashley participated in the discussions at Tiffani's funeral that culminated in the plot to harm his reputation.

¶15   Justin claimed that Ashley gave a speech at Tiffani's funeral where she said that Tiffani's "story is not over, in fact, it is just beginning. I promise to fight for her and be the voice for her justice." Justin further alleged that Ashley said that as "a group of family and friends who love her dearly, we need to keep her spirit alive and fight for her."

¶16   Justin also alleged that Ashley attempted to break into Tiffani's residence in Utah to take Tiffani's belongings. And that in connection with that attempt, she "angrily and fervently shouted to the landlord and police officers that [Justin] had murdered her sister."

5

¶17 Ashley moved to dismiss Justin's allegations against her and attached a supporting declaration to her motion. Ashley's declaration claimed that she was a citizen and resident of California and that she had never resided in Utah. Ashley denied meeting with anyone at Tiffani's funeral to discuss a plan to hurt Justin's reputation. The declaration specifically denied reaching "'an explicit or implicit meeting of the minds' with any other person . . . to defame Justin, place him in a false light, or cause him emotional distress by publicizing accusations that he had committed domestic violence against Tiffani or that he was responsible for her death."

¶18 Although Justin opposed Ashley's motion, he did not file a counter-declaration, nor did he offer any evidence of his own to support his opposition.

### III. Kristin Breinholt

¶19 Justin alleged, on information and belief, that Breinholt participated in discussions at Tiffani's funeral and that she reached a meeting of the minds with some of the other defendants to make unfounded accusations against him.

¶20 Justin further alleged that Breinholt visited Traci's home before Tiffani's funeral to discuss with Traci and Ashley their "mutual desire to damage" his reputation. And he alleged that Breinholt reposted a GoFundMe link that raised money for domestic abuse victims. The post allegedly stated, "JUST AS I KNOW TIFF DID FIGHT FOR US . . . I WILL FIGHT FOR HER. . . . IF YOU, OR SOMEONE YOU KNOW IS IN AN ABUSIVE RELATIONSHIP PLEASE REACH OUT. . . . NO MORE, THIS CAN'T HAPPEN ANYMORE."

¶21 Breinholt attached a declaration to her motion to dismiss stating that during Tiffani's funeral, Breinholt did not "discuss [Justin] or my or anyone else's intent to damage his reputation." It further denied reaching "an explicit or implicit meeting of the minds with any person" to defame Justin or to publicize unfounded accusations against him. Breinholt declared that she had "never been to Traci Phillips' home." Breinholt's declaration also attested that she was an Arizona resident and had "never been a resident of Utah," nor did she "have any significant ties to Utah."

¶22 Justin did not offer any evidence in support of his opposition to Breinholt's motion to dismiss.

### IV. Kim Cerchiai

¶23 Justin's complaint alleged that, in addition to participating in the conspiratorial discussions at Tiffani's funeral, Cerchiai spoke at the funeral and read defamatory statements about him that the Phillipses had written.

¶24 Cerchiai's declaration asserted that she is an Arizona citizen and has continuously resided in Arizona since 1978. Her declaration stated, "My public comments at the funeral service were composed by myself and were not written or co-authored by any other individual." It also denied the allegation that she had reached a meeting of the minds to defame Justin. The declaration asserted that Cerchiai "did not agree to act in concert with anyone to defame Justin [] while I was present for the funeral service of Tiffani [] in Scottsdale, AZ."

¶25 Justin made no effort to refute this evidence with his own.

### V. Leanne Daly

¶26 Justin's allegations against Daly are different from those against the other appellants. Justin did not specifically allege, for example, that Daly combined with the other appellants to publicize accusations that Justin subjected Tiffani to domestic abuse.

¶27 Justin instead argues that Daly is covered by allegations he made against other appellants. That is, Justin's complaint contends that Daly is among the "other defendants" who met with certain named defendants to discuss a plan to harm his reputation.

¶28 In addition to Justin's "other defendant" conspiracy allegations against Daly, his complaint alleged that Daly posted the same GoFundMe link as Breinholt. Justin alleged that the post had the following caption: "The best birthday gift that we can give our beautiful little [Tiffani and Justin's minor daughter] is to ensure that her Mom's legacy lives on to help other victims of abuse . . . victims that still have the chance to be saved."

¶29 Daly attached a declaration to her motion to dismiss. It asserted that she is an Irish citizen who has never been a resident of Utah. It acknowledged that she attended Tiffani's funeral but denied that she met "to discuss a mutual intention to damage Justin's reputation."

¶30 Justin failed to submit a counter-declaration with his opposition brief.

## VI. Marco Majors

¶31 Justin alleged that Teal Marie Deegan "reached an explicit or implicit meeting of the minds with other [d]efendants in this case, in particular . . . Marco Majors," to defame Justin.

¶32 He also alleged that Majors reposted something titled "Be Strong For My Cousin Tiffani . . . DV Abuse Is Very Real." The post is alleged to have stated,

> We will not stop until we seek justice for Tiffani! Stop domestic abuse . . . if you know someone that is in an abusive relationship, please reach out to them and offer help! . . . Tiffani was so loved by many, and without a doubt will [sic] keep fighting for her.

¶33 Majors's declaration admitted that he had attended Tiffani's funeral but denied that he met to discuss a mutual intention to damage Justin's reputation. Majors's declaration additionally asserted that he is a Texas resident who has never been a Utah resident.

¶34 Justin did not contest Majors's sworn statements with evidence supporting his allegations.

## VII. Nancy Morgan

¶35 Justin alleged, on information and belief, that Nancy Morgan met with Traci and agreed to defame Justin and place him in a false light by publicizing unfounded allegations about his role in Tiffani's death.

¶36 He also alleged that Morgan reposted the following statement on a social media site:

> We will not stop until we seek justice for Tiffani! Stop domestic abuse . . . if you know someone that is in an abusive relationship, please reach out to them and offer help! . . . Tiffani was so loved by many, and without a doubt will [sic] keep fighting for her.

Justin further alleged that Morgan commented on a post about Tiffani and stated, "[w]e will not rest until we have justice for our Tiffani."

¶37 Morgan submitted a declaration in support of her motion to dismiss. She declared that she is an Arizona resident. She denied

participating in any conspiracy. She also denied attending any meeting where a conspiracy was discussed.

¶38 Justin's opposition lacked any evidence contradicting Morgan's sworn statements.

## VIII. Amanda Seymore

¶39 Justin alleged, on information and belief, that Seymore had reached a meeting of the minds with other defendants to defame Justin. Justin's complaint also alleged that around the day of Tiffani's funeral, Seymore wrote on Facebook

> I still can not [sic] and will not accept this going without Tiff's voice being HEARD. If you haven't called yet, call. If you have called, call again. And again. For her families [sic] sake, for her children's sake.[] SPEAK for Tiffani. Detective Dove was "off duty" so continued on dispatch, got to chiefs voicemail and finally spoke to lieutenant Page possibly Paige, didn't confirm spelling and can't find his standing in Utah after a deep long search.[] . . . Speak up, speak out. The case is still open for a reason!!! Utah police department- (435) 986-1515, press 1 for non emergency dispatch and hold for a dispatcher, then ask for Detective Dove for Lieutenant Page/Paige []. Any voice heard is a voice worth hearing. They need feedback, they need you!!!

The complaint alleged that Seymore could only have learned the detective's information from a defendant related to Tiffani. Justin's complaint also alleged that "Seymore engaged in a discussion [via Facebook comments] with" defendants not a part of this appeal, "celebrating the effect their collective posts were having on . . . [Justin's] reputation." Justin claimed that Seymore replied, in response to a comment on her post, "They're [sic] reputation is not worth Tiffani's life."

¶40 Seymore's declaration asserted that she is a Missouri resident with no Utah ties. The declaration further stated that Seymore did not attend Tiffani's funeral. It did not, however, discuss Justin's allegations that she had reached a meeting of the minds with other defendants to defame Justin.

¶41 Seymore's verified reply, on the other hand, responded to the conspiracy allegations.[4] The verified reply specifically denied that Seymore had reached "a meeting of the minds of any kind, implicit or explicit, with any of the other" defendants "to act together in any manner whatsoever." It emphasized that she "certainly has not conspired" with any other defendant to attempt to harm Justin.

¶42 Justin did not respond to Seymore's declaration or verified reply with his own declaration.

IX. The Personal Jurisdiction Proceedings

¶43 The district court held hours of motion hearings over several months to resolve the motions to dismiss. The district court did not hold evidentiary hearings, but at one point, the court gave Justin the opportunity to verify his complaint on the record. The court said, "Utah law specifically states that once the defendants file affidavits putting jurisdiction at risk, the plaintiff can't simply rely on an unverified complaint. And what I'm going to do, I'm going to give you that time [to see if Justin would like to verify his complaint]." Justin conferred with counsel, after which his counsel replied, "We think it makes more sense to just proceed today based on the filings, not adding a verification to this complaint."

¶44 The district court concluded that it had specific personal jurisdiction over Traci and Ashley. It therefore denied their motions to dismiss.

¶45 The district court also concluded it had personal jurisdiction over Breinholt, Cerchiai, Daly, Majors, Morgan, and Seymore based on a conspiracy theory of personal jurisdiction. The court denied their motions to dismiss.

¶46 Each appellant individually filed a petition for interlocutory review. We granted each petition and consolidated the appeals.

---

[4] The Utah Rules of Civil Procedure provide that if a "reply memorandum includes evidence not previously set forth, the nonmoving party may file an objection to the evidence no later than 7 days after the reply memorandum is filed." UTAH R. CIV. P. 7(f). Justin did not object to the evidence that Seymore included in her verified reply.

**ISSUES AND STANDARD OF REVIEW**

¶47 Appellants can be organized into two groups based on their arguments. Traci and Ashley compose the first group. Traci and Ashley argue that (1) the district court erred because it "assum[ed] the allegations in [Justin's] Second Amended Complaint as true and ma[de] all inferences in [his] favor" despite contradictory documentary evidence; (2) they did not have sufficient minimum contacts to establish specific personal jurisdiction; and (3) Justin failed to plead with specificity each element of conspiracy jurisdiction.

¶48 Breinholt, Cerchiai, Daly, Majors, Morgan, and Seymore make up the second group. These appellants argue, among other things, that the district court erred because (1) it failed to strike Justin's allegations that the appellants' documentary evidence had controverted; and (2) Justin failed to plead with specificity each element of conspiracy jurisdiction.

¶49 Because the district court ruled on the jurisdictional questions based on "documentary evidence," this appeal "presents only legal questions that are reviewed for correctness." *Raser Techs., Inc. ex rel. Hous. Phx. Grp., LLC v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 32, 449 P.3d 150 (cleaned up).

**ANALYSIS**

I. WE IMPROVIDENTLY GRANTED TRACI AND ASHLEY'S PETITIONS FOR INTERLOCUTORY REVIEW

¶50 On appeal, Traci and Ashley argue that the district court lacked specific personal jurisdiction over them, either based on their own suit-related contacts with Utah or based on a conspiracy theory of jurisdiction. But as we explain, we granted interlocutory review only on the latter issue, a question the district court did not reach with respect to Traci and Ashley.

¶51 With respect to conspiracy-based jurisdiction, Traci and Ashley argue that the district court erred because Justin failed to plead "reasonably definite factual allegations establishing that [Traci and Ashley were a] part of a combination of two or more persons who had a meeting of the minds on an object to be accomplished."

¶52 Traci and Ashley petitioned for interlocutory review of the "District Court's denial of Moving Defendants' Motion to Dismiss

for Lack of Jurisdiction based on a conspiracy theory of jurisdiction." We granted their petitions on this issue—and only this issue. But the district court did not rule based on the conspiracy theory with respect to Traci and Ashley. Indeed, it did not need to because it concluded that Traci and Ashley each had personal specific contacts with Utah that allowed the exercise of jurisdiction over them.

¶53   Traci and Ashley did not ask us to review that ruling. We granted interlocutory review in this matter to address the question that all appellants—including Traci and Ashley—asked us to review: whether the district court erred when it ruled that it had "specific personal jurisdiction . . . based on a conspiracy theory of personal jurisdiction" over the appellants. Because the district court did not rule on conspiracy jurisdiction for Traci and Ashley, we dismiss their petitions for interlocutory review as improvidently granted. We offer no opinion on the issue that Traci and Ashley did not ask us to reach when they petitioned for interlocutory review—whether the district court erred when it denied their motions to dismiss because it concluded that the exercise of specific personal jurisdiction based on their personal contacts with Utah was warranted.

## II. GENERAL PRINCIPLES OF PERSONAL JURISDICTION

¶54   "The authority of the state to hale a nonresident into a state court hinges on the ability to establish personal jurisdiction." *Raser Techs., Inc. ex rel. Hous. Phx. Grp., LLC v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 34, 449 P.3d 150 (cleaned up). A "court's exercise of personal jurisdiction must be consistent with the due process protections of the Fifth and Fourteen[th] Amendments to the United States Constitution." *Id.* (cleaned up).

¶55   There are two categories of personal jurisdiction: general and specific. *Id.* A "court may assert general jurisdiction over foreign [defendants] to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (cleaned up). In contrast, "specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state." *Id.* ¶ 35 (cleaned up). Only specific personal jurisdiction is at issue in this case.

¶56 "For a State to exercise [specific personal] jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). *Walden* directed courts to focus on "two related aspects of the relationship among the defendant, the forum, and the litigation to determine whether jurisdiction is proper." *Raser*, 2019 UT 44, ¶ 37 (cleaned up). The first looks to whether "the relationship arises out of contacts that the defendant *himself* creates with the forum State." *Id.* (cleaned up). The second examines whether "a defendant's contacts are with the forum State itself, not with persons who reside there." *Id.* (cleaned up).

¶57 A conspiracy theory of specific personal jurisdiction "imputes minimum contacts to all members of a conspiracy if one member took a substantial and overt act in furtherance of the conspiracy in the forum state." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 28, 201 P.3d 944. "The conspiracy theory of personal jurisdiction is based on the time honored notion that the acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Id.* (cleaned up) (quoting *Textor v. Bd. of Regents*, 711 F.2d 1387, 1392 (7th Cir. 1983)).

¶58 In *Raser*, we noted that a "conspiracy theory of jurisdiction can satisfy" federal due process concerns. 2019 UT 44, ¶ 76. We reasoned that a "defendant's acts through an agent" is an "example of one kind of relevant contact that may subject an individual to jurisdiction." *Id.* (cleaned up). We recognized that "because a conspiracy is a type of agency relationship, an act taken during the course of a conspiracy relationship may lead to specific personal jurisdiction over a defendant." *Id.* ¶ 79.

¶59 This court was explicitly wary of adopting a conspiracy theory of jurisdiction. *Id.* ¶ 86. We ultimately concluded that a Utah plaintiff could attempt to allege that a nonresident defendant is subject to the jurisdiction of the Utah court based upon a co-conspirator's Utah contacts because the Utah Nonresident Jurisdiction Act "direct[ed] us to apply the statute so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* ¶ 73 (cleaned up). Put simply, because the Legislature "made the policy decision" about the scope of a court's jurisdiction over nonresidents, our job in *Raser* was to

decide whether "a conspiracy theory of jurisdiction [] comports with due process principles." *Id.*

¶60 We understood and explained that if a court were to exercise jurisdiction over a defendant based upon a co-conspirator's contacts with the forum, that court would need to assess "the role the co-conspirator played in the conspiracy and the contacts between the conspirators and the forum state" to ensure it had jurisdiction. *Id.* ¶ 86. We emphasized that courts applying the *Raser* test should be guided by the principle that personal jurisdiction can only exist where a defendant "could reasonably anticipate being haled into court in" Utah. *Id.* We also stressed that a "bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough to establish jurisdiction" and that a viable "complaint must set forth *reasonably definite factual allegations*, either direct or inferential, regarding each material element needed to show a civil conspiracy." *Id.* ¶ 87 (cleaned up) (emphasis added).

¶61 Against that backdrop, the *Raser* court held that to assert specific personal jurisdiction under a conspiracy theory, a plaintiff needs to "plead with particularity" for each defendant that:

> (1) the defendant is a member of a conspiracy, (2) the acts of the defendant's co-conspirators create minimum contacts with the forum, and (3) the defendant could have reasonably anticipated that her co-conspirator's actions would connect the conspiracy to the forum state in a meaningful way, such that she could expect to defend herself in that forum.[5]

*Id.* ¶ 85.

---

[5] *Raser*'s requirement that a plaintiff plead that the defendant is a member of a conspiracy presupposes that the plaintiff can also adequately plead the existence of a conspiracy. This requires the plaintiff to plead five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993) (cleaned up).

¶62  Our concerns about the potential for a conspiracy theory of jurisdiction to run roughshod over an out-of-state defendant's due process rights are somewhat assuaged by the process for allowing a defendant to contest jurisdiction early in the proceedings. Utah Rule of Civil Procedure 12(b)(2) permits a defendant to respond to a complaint with a motion to dismiss that contests personal jurisdiction. Caselaw outlining the procedures for handling those challenges has bloomed around the rule.

¶63 We began to develop our mechanism for resolving personal jurisdiction disputes in *Roskelley & Co. v. Lerco, Inc.*, 610 P.2d 1307 (Utah 1980). The defendant in *Roskelley* challenged the district court's ability to exercise personal jurisdiction over it and supported its challenge with an affidavit contradicting the plaintiff's allegations. *Id.* at 1308–09. The facts the defendant asserted "were not controverted by plaintiff by counter-affidavit or otherwise." *Id.* at 1309. The district court denied the defendant's motion and the defendant appealed. *Id.* at 1308.

¶64 We declared that "when jurisdiction is challenged, plaintiff cannot solely rely on allegations of jurisdiction in its complaint in the face of an affidavit by defendant which specifically contradicts those general allegations." *Id.* at 1310. Because the defendant's affidavit specifically contradicted the plaintiff's general allegations, the *Roskelley* court reversed the district court. *Id.* at 1309–10.

¶65  We continued to develop the procedure in *Anderson v. American Society of Plastic & Reconstructive Surgeons*, 807 P.2d 825 (Utah 1990).

¶66  Anderson's claims arose out of "experimental therapy she received for a disfiguring condition of her face." *Id.* at 826. Two out-of-state defendants did not conduct Anderson's therapy, but they did set up and monitor its implementation. *Id.* Anderson and the two defendants disputed whether the defendants had sufficient contacts with Utah to permit the district court to "assert jurisdiction compatible with due process requirements." *Id.* Anderson and the two defendants submitted deposition testimony and affidavits to support their arguments. *Id.* The district court in *Anderson* concluded "that to assert jurisdiction over [the] defendants would offend due process." *Id.*

15

¶67 We noted that we had not outlined a procedure to govern jurisdictional contests in *Roskelley* because the plaintiff there had failed to introduce any evidence to support the assertion of jurisdiction. *Id.* at 826–27. Borrowing from federal procedure, we held that when a court reviews a rule 12(b)(2) challenge, it must accept the plaintiff's factual allegations "as true unless specifically controverted by the defendant's affidavits or by depositions, but any disputes in the documentary evidence are resolved in the plaintiff's favor." *Id.* at 827.

¶68 The test we developed in *Anderson* requires that if a defendant introduces evidence to contradict the complaint's allegations that establish personal jurisdiction, the burden shifts to the plaintiff to support those assertions with something more than what is in the complaint. That is, the plaintiff can no longer rely on the complaint's allegations but must provide the court prima facie *evidence* of personal jurisdiction.[6]

¶69 If the plaintiff fails to provide prima facie evidence of personal jurisdiction, then there is no evidentiary dispute, and the jurisdictional facts offered by the defendant "are taken as true and the facts recited in the complaint are considered only to the extent that they do not contradict the" defendant's evidence. *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992), *holding modified on other grounds by State ex rel. W.A.*, 2002 UT 127, 63 P.3d 607.

¶70 If, however, the plaintiff puts forward evidence such that there is evidentiary support on both sides of the jurisdictional question, "any disputes in the documentary evidence are resolved in the plaintiff's favor." *Anderson*, 807 P.2d at 827. Alternatively, if

---

[6] Courts can, in appropriate circumstances, permit limited discovery aimed at jurisdictional issues to help address a plaintiff's informational disadvantage. District courts are "entrusted with broad discretion in dealing with discovery matters," including whether to grant jurisdictional discovery. *See In re Discipline of Pendleton*, 2000 UT 77, ¶ 38, 11 P.3d 284; *see also ClearOne, Inc. v. Revolabs, Inc.*, 2016 UT 16, ¶ 35, 369 P.3d 1269 ("Denying jurisdictional discovery is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." (cleaned up)), *abrogated on other grounds by Raser*, 2019 UT 44, ¶ 35.

jurisdiction turns on different facts than the merits of the case, a district court has the option to hold an evidentiary hearing and make findings and conclusions on the jurisdictional question. But we have cautioned that it would be inappropriate to hold an evidentiary hearing "[w]hen jurisdiction turns on the same facts as the merits of the case" because this could intrude on the right to a jury and result in inefficient use of judicial resources. *Id.*

### III. THE DISTRICT COURT ERRONEOUSLY CONCLUDED IT POSSESSED JURISDICTION OVER THE OUT-OF-STATE APPELLANTS

¶71 As noted above, we have consolidated several individual appeals. Almost every appellant filed separate briefing in support of his or her appeal. Although the appellants raise similar arguments, each offers at least a slight variation based on Justin's particular allegations. At the risk of repetition, we discuss each appellant individually.

### A. Kristin Breinholt

¶72 Justin alleged that Breinholt "combined with other [d]efendants" at Tiffani's funeral to damage Justin's reputation by publicizing accusations that he committed domestic violence against Tiffani and caused her death. Justin also alleges that Breinholt "reached an explicit or implicit meeting of the minds with other [d]efendants in this case" to do the same. Justin pleaded that Breinholt visited Traci's house to discuss the same objective. And he claimed that Breinholt made a defamatory repost on a social media site that contained a GoFundMe link to raise money for victims of domestic violence.

¶73 Breinholt moved to dismiss Justin's complaint for lack of personal jurisdiction. She supported her motion with a sworn declaration. Her declaration stated that during Tiffani's "funeral and related services, I did not discuss [Justin] or my or anyone else's intent to damage his reputation." It further explained, "I never reached an explicit or implicit meeting of the minds with any person . . . to defame Justin [] or to place him in a false light by publicizing unfounded accusations that he had committed domestic violence against Tiffani [] or that he was responsible for her death[.]" And the declaration denied that Breinholt had ever visited Traci's home.

¶74 The district court denied Breinholt's motion to dismiss. It commented that "at a Rule 12(b) situation, I am normally loathe to

dismiss because it would be without prejudice when there is jurisdictional issues. . . . And I do have to take any undisputed facts or facts that may be in dispute but [must make reasonable] inferences and have those inferences go in favor of the plaintiff." The court concluded that "there is enough, barely, for a conspiracy theory jurisdiction." The court warned Justin's counsel that the case was "hanging on by very, very thin . . . threads of jurisdiction. And you're going to have to, I believe, have more to have this go much — very much further."

¶75   Breinholt argues that because she submitted documentary evidence "contradicting [Justin's] unverified allegations regarding jurisdiction, 'the facts asserted in the affidavit are taken as true and the facts recited in the complaint are considered only to the extent that they do not contradict the affidavit.'" (Quoting *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992).)

¶76   Justin counters that the "myriad legal conclusions as well as 'factual' assertions that overlap with an ultimate issue of the merits of a claim (e.g., whether a meeting of the Co-Conspirators occurred) contained in the Co-Conspirators' affidavits are entirely irrelevant for purposes of this appeal."[7] Justin claims that because

---

[7] Justin raises an interesting point about legal conclusions masquerading as factual assertions. Justin contends that a clever defendant might carefully word a denial so that it appears that the defendant is denying the factual allegation when she is really just contesting a legal conclusion embedded in the allegation. We can agree, in the abstract, that a declaration that doesn't really contest the factual allegations may not be sufficient to trigger the need for the plaintiff to support those allegations with evidence.

The problem for Justin here is that the appellants refuted his allegations at the same level of generality at which those allegations were pleaded. That is, when Justin made specific allegations, the appellants countered with specific refutations. For example, Justin alleged that Breinholt met with Traci at her home. Breinholt denied ever having been to Traci's house. And when Justin relied on general statements, the appellants responded with general refutations. For example, Justin contended that Breinholt combined with other defendants to reach a meeting of the minds to defame

(continued . . .)

"Breinholt's dispute . . . 'turns on the same facts as the merit of the case,'" a determination of whether jurisdiction exists must wait until the trial on the merits. (Quoting *Anderson v. Am. Soc'y of Plastic & Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990).)

¶77 Where there is an evidentiary dispute over jurisdictional facts, and that dispute goes to the merits of the case, the district court should not resolve the evidentiary dispute at the motion to dismiss stage but should allow the ultimate finder of fact to sort it out. *See id.* Justin misapplies this concept because to create that dispute there needs to be evidence on both sides of the ledger. Here, the evidence was entirely one-sided. Breinholt submitted a declaration contesting the lion's share of the material allegations against her. This triggered Justin's obligation to put evidence before the court that supported his assertions. *See id.* at 826 ("[I]n a pretrial determination of jurisdiction, a plaintiff cannot rely on allegations made in the complaint if the defendant has specifically controverted alleged jurisdictional facts by affidavit."). Justin chose not to. The consequence of that choice was that the district court could not rely on any of his unsupported allegations to determine whether jurisdiction is proper.

¶78 For Justin's argument to have teeth, he needed to put evidence before the court to support his allegations.[8] For example, Justin alleges that Breinholt conspired with other defendants at Tiffani's funeral to defame him. Breinholt denied that allegation under oath. To create the evidentiary conflict Justin says exists, he would have needed to provide the district court with some evidence that the meeting at the funeral occurred and that the

---

him. Breinholt declared that she "never reached an explicit or implicit meeting of the minds with any person." Justin should not be heard to complain about the form of denials that mirrored the way he chose to frame his allegations. Once Breinholt refuted Justin's allegations, the burden shifted to him to forward some evidence to create a factual issue.

[8] To be sure, conflicts "between the affidavits submitted on the question of personal jurisdiction are [] resolved in favor of the plaintiff." *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983) (cleaned up); *see also Anderson*, 807 P.2d at 827. But a party in Justin's shoes must submit an affidavit to create that conflict.

defendants conspired. But he did not. And this prevents Justin from relying on the caselaw that sets forth the procedure when there is a bona fide evidentiary dispute before the court.

¶79 Justin pushes back against this conclusion and cites cases where we have said that all a plaintiff needs to do at a pleading stage is to "make a prima facie showing of personal jurisdiction." (Quoting *id.* at 827.) Justin's argument demonstrates a misunderstanding of a plaintiff's burden when a defendant challenges jurisdiction *with evidence*.

¶80 A rule 12(b)(2) motion to dismiss for lack of personal jurisdiction comes in two flavors. An out-of-state defendant could file a rule 12(b)(2) motion and argue that, even if the court accepts the facts of the complaint as true, the plaintiff has not made a prima facie showing that jurisdiction over him is proper. If, for example, a plaintiff alleged that an out-of-state defendant stole property from him, but the plaintiff's complaint fails to allege that the theft occurred in Utah, the defendant could argue that the plaintiff's allegations fail to establish the court's specific personal jurisdiction over him because it does not state a prima facie showing of jurisdiction.

¶81 On the other hand, if the plaintiff alleged the theft occurred in Utah, the defendant could still bring a rule 12(b)(2) motion challenging jurisdiction. In this scenario, the defendant might forward evidence to the district court contesting the accuracy of the complaint's allegations. In this circumstance, the motion would not attack the sufficiency of the bare allegations of the complaint but would put the accuracy of the jurisdictional allegations at issue.

¶82 In each instance, the plaintiff bears a burden to make a prima facie showing of jurisdiction. But in the second example, because the defendant has specifically challenged, with evidence, a factual allegation that establishes personal jurisdiction, the plaintiff must meet the defendant's declaration with evidence to support the exercise of jurisdiction. If the plaintiff fails to do so, he cannot make a prima facie showing of jurisdiction, and dismissal is proper.

¶83 The Tenth Circuit has demonstrated this principle in action. *See Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449 (10th Cir. 1983). The *American Land Program* plaintiff "alleged by unverified complaint that a conspiracy existed." *Id.* at 1454. The defendants "countered by

sworn affidavits that no conspiracy to defame existed." *Id.* And the plaintiff "failed to controvert defendants' affidavits other than by conclusory allegations in its complaint and briefs." *Id.* The district court dismissed the conspiracy defendants for lack of personal jurisdiction. *See id.* at 1451. The Tenth Circuit affirmed the dismissal of the conspiracy defendants, reasoning that the plaintiffs had not "asserted by affidavit that defendants conspired to commit any overt act in Utah." *Id.* at 1454; *see also id.* at 1454 n.2 ("On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof. He need not, however, establish personal jurisdiction by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient. . . . In this case, plaintiff offered no sworn statements to contradict the assertions in defendants' affidavits." (cleaned up)).

¶84 Much like what occurred in *American Land Program*, when Breinholt submitted a declaration contesting the complaint's allegations, Justin needed to forward evidence of his own. Justin did not, and that meant that Justin is left with just the allegations that Breinholt either admitted or failed to controvert.

¶85 Justin's complaint alleges that Breinholt:

- went to Traci's home on the day of Tiffani's funeral to discuss "the subject of [Tiffani's] death in connection with [Justin] and [Traci, Ashley, and Sara Grace Lewis's] mutual desire to damage [Justin's] reputation";

- attended Tiffani's funeral;

- combined at the funeral with the other defendants and "discussed their mutual intention to damage [Justin's] reputation by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death";

- "reached an explicit or implicit meeting of the minds with the other [d]efendants in this case . . . to defame [Justin] . . . by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death"; and

- posted another defendant's GoFundMe link that raised money for domestic abuse victims and added a photo of Tiffani and a caption that said: "JUST AS I KNOW TIFF DID

FIGHT FOR US . . . I WILL FIGHT FOR HER. . . . IF YOU, OR SOMEONE YOU KNOW IS IN AN ABUSIVE RELATIONSHIP PLEASE REACH OUT. . . . NO MORE, THIS CAN'T HAPPEN ANYMORE."

¶86 Breinholt's declaration specifically controverted most of these factual allegations by asserting, under oath, that:

- she "ha[s] never been to Traci Phillips' home" and was not "present for the alleged discussion between Traci [], Sara Grace Lewis, and Ashley";

- during Tiffani's funeral, she "did not discuss [Justin] or my or anyone else's intent to damage his reputation"; and

- she "never reached an explicit or implicit meeting of the minds with any person . . . to defame Justin . . . by publicizing unfounded accusations that he had committed domestic violence against Tiffani [] or that he was responsible for her death."

¶87 Because Justin did not controvert Breinholt's declaration, the only allegations left on which the district court could premise jurisdiction were that Breinholt was friends with Tiffani and some of the defendants, attended Tiffani's funeral, and posted a GoFundMe link that raised money for domestic abuse victims after adding a photo of Tiffani and a plea to reach out to domestic abuse victims.

¶88 This is plainly insufficient to establish what *Raser* held a plaintiff must demonstrate for a court to assert conspiracy jurisdiction. The *Raser* court held that a plaintiff needs to, among other things, show that the defendant is a member of a conspiracy, and that the defendant could have reasonably anticipated that her co-conspirator's actions would connect the conspiracy to the forum state in a meaningful way, such that she could expect to defend herself in that forum. *Raser Techs., Inc. ex rel. Hous. Phx. Grp., LLC v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 85, 449 P.3d 150.

¶89 To demonstrate that a defendant is a member of a conspiracy, a plaintiff must plead, among other things, that the defendant had a meeting of the minds about an object to be accomplished with her co-conspirators. *See Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993). After Breinholt's declaration narrowed the field, the surviving allegations fail to meet that

standard. That is, once Breinholt declared under oath that she reached no meeting of the minds, the allegations that she attended a funeral and posted that she believed Tiffani was in an abusive relationship do not establish that she joined a conspiracy to defame Justin.

¶90 Justin disagrees and argues that Breinholt's "post[] on social media that Tiffani was a victim of domestic violence" is sufficient for the court to infer that she had joined the conspiracy to defame him.[9] In other words, Justin contends that Breinholt's post-funeral conduct is consistent with a person who had entered into a conspiracy, so he has alleged a prima facie case of conspiracy jurisdiction.

¶91 While proof of parallel actions might possibly, in some circumstances, allow a finder of fact to conclude the existence of a conspiracy—a question we need not resolve today—bare allegations of such actions are insufficient to permit the assertion of personal jurisdiction over an out-of-state defendant where that defendant has declared under oath that she did not reach a meeting of the minds to conspire. *See Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 30, 201 P.3d 944.

¶92 As noted above, Breinholt's declaration specifically contradicts Justin's allegation that she visited Traci's home to discuss how to defame Justin and "combined with other [d]efendants" at Tiffani's funeral to discuss "their mutual intention" to defame Justin. The district court could not, in the face of those sworn denials, reasonably infer from allegations of Breinholt's presence at Tiffani's funeral that she engaged in the alleged conspiracy. To ensure that we respect an out-of-state defendant's due process rights, once that defendant provides evidence to contradict conspiracy jurisdiction allegations, a plaintiff in Justin's position needs to forward evidence to support the allegations of conspiracy jurisdiction.

¶93 The district court erred when it concluded that it could assert jurisdiction over Breinholt after Justin failed to introduce evidence to support his jurisdictional allegations.

---

[9] Justin makes similar arguments regarding Daly, Majors, Morgan, and Seymore. And for each appellant, we reach the same conclusion for the same reasons.

## B. Kim Cerchiai

¶94   Justin alleged that, at Tiffani's funeral, Cerchiai read aloud defamatory statements about him that the Phillipses wrote. Justin additionally alleged, on information and belief, that Cerchiai had "reached an explicit or implicit meeting of the minds" with the other defendants to defame Justin "and cause him emotional distress by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death."

¶95 Cerchiai's declaration specifically contested Justin's allegations. It stated that her "public comments at the funeral service were composed by myself and were not written or co-authored by any other individual." It also stated that Cerchiai "never reached an explicit or implicit meeting of the minds with any person . . . to defame Justin" and that she "did not agree to act in concert with anyone to defame Justin [] while [she] was present for the funeral service of Tiffani [] in Scottsdale, AZ."

¶96   The district court concluded that under "the facts right now and the inferences that I need to draw from those, however, I'm not going to grant [Cerchiai's] motion as to denial of conspiracy theory [jurisdiction]." The court's written order concluded it did "not have specific personal jurisdiction over . . . Cerchiai under Utah Code [] § 78B-3-205, but the [c]ourt does have specific personal jurisdiction . . . based on a conspiracy theory of personal jurisdiction."

¶97   Cerchiai advances an argument that the other appellants do not make. She claims that Justin's "conclusory allegations of a civil conspiracy involving [] Cerchiai, made only upon information and belief, fail to comply with the heightened pleading standard required by Utah law, and therefore fail to make a *prima facie* showing that specific personal jurisdiction can be exercised over" her. Justin responds that his complaint "provided the who, what, when, and where regarding Cerchiai's involvement in the conspiracy[,] meets any definition of 'specificity' that exists," and

24

"has thus met his burden of making a *prima facie* showing that Cerchiai is a member of the conspiracy."[10]

¶98 Most civil claims only require a "short and plain: (1) statement of the claim showing that the party is entitled to relief; and (2) demand for judgment for specified relief." UTAH R. CIV. P. 8(a). Claims subject to heightened pleading standards, like fraud, are governed by Utah Rule of Civil Procedure 9. *See, e.g.*, *Bright v. Sorensen*, 2020 UT 18, ¶ 34 n.6, 463 P.3d 626 (noting rule 9's particularity requirement for certain claims "supplements but does not supplant Rule 8's notice pleading standard" (cleaned up)); *Rawcliffe v. Anciaux*, 2017 UT 72, ¶ 26 n.15, 416 P.3d 362. Rule 9 makes no mention of civil conspiracy.

¶99 But when *Raser* stated that the "complaint must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to show a civil conspiracy," we created a standard that, for the purpose of asserting jurisdiction over an out-of-state defendant, civil conspiracy needs more than what rule 8 requires. 2019 UT 44, ¶ 87; *id.* ¶ 87 n.27. To be sure, *Raser* does not stand for the proposition that any claim of civil conspiracy must meet a heightened pleading standard. It is only when a plaintiff seeks to use allegations of a conspiracy to attribute a co-conspirator's contacts to an out-of-state conspirator that *Raser*'s dictates come into play.

¶100 We do not need to sort out whether the bare allegations of Justin's complaint would meet the heightened standard *Raser* describes. This is because, as we have just discussed, the paradigm shifted once Cerchiai submitted a declaration contesting Justin's allegations. Once that happened, the question became one of the evidence on each side of the jurisdictional equation. And, as with

---

[10] Unlike his arguments regarding the other appellants, Justin does not argue that we can infer Cerchiai had a meeting of the minds with the other appellants to defame him. Justin instead contends that when Cerchiai delivered the funeral speech allegedly written by the Phillipses, "[s]he instantly became an active member of the conspiracy." As we further explain below, because Cerchiai controverted by documentary evidence that the Phillipses wrote her speech, and Justin provided no evidentiary opposition, the allegations of Justin's complaint fail to establish conspiracy jurisdiction over Cerchiai.

Breinholt, Justin's failure to put evidence of his own into the record made for a one-sided affair.

¶101 Cerchiai's declaration specifically refuted Justin's allegations about who wrote the speech she read at Tiffani's funeral. Cerchiai also refuted the allegation that she had combined with the other defendants to defame Justin with domestic violence accusations. The only material allegations from Justin's complaint that survive Cerchiai's refutations are that Cerchiai was Tiffani's friend and that she spoke at Tiffani's funeral.

¶102 Just as with Breinholt, Justin's uncontroverted allegations about Cerchiai do not make a prima facie showing of jurisdiction under a conspiracy theory. The district court erred when it concluded that it could assert jurisdiction over Cerchiai.

### C. Leanne Daly

¶103 Justin's complaint fails to specifically name Daly as a conspirator. It instead alleges, on information and belief, that "Breinholt combined with *the other [d]efendants in attendance* [at the funeral and] met and discussed their mutual intention to damage [Justin's] reputation by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death." (Emphasis added.)

¶104 The complaint also alleges that

> Upon information and belief, . . . Breinholt reached an explicit or implicit meeting of the minds with *the other [d]efendants in this case* . . . to defame [Justin] and place him in a false light and cause him emotional distress by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death.

(Emphasis added.) One can only consider Justin to have alleged Daly was a co-conspirator if she is one of the "other [d]efendants in attendance" at Tiffani's funeral or one of the "other [d]efendants in this case."

¶105 Daly's declaration stated that she "attended Tiffani's funeral" and that she posted the following on a social media site: "The best birthday gift that we can give our beautiful little [Tiffani and Justin's minor daughter] is to ensure that her Mom's legacy lives on to help other victims of abuse . . . victims that still have the

chance to be saved." Daly's declaration also stated that she "did not 'combine' or meet with any other person or group of people at Tiffani's funeral to discuss a mutual intention to damage Justin's reputation or to publicize unfounded accusations that he had committed domestic violence against Tiffani and was responsible for Tiffani's death."

¶106 The district court declared during oral argument that it was "ruling that there is barely enough to survive a Rule 12(b) motion at this time." The court's written order concluded that the court could assert jurisdiction over Daly under a conspiracy theory of jurisdiction.

¶107 Daly argues that the submission of her declaration controverting Justin's allegations required him to "submit adequate evidence making a *prima facie* showing that the court ha[d] personal jurisdiction over" her, and his failure to do so meant "there was no dispute regarding the facts presented in Daly's" declaration. Daly is correct.

¶108 In what by now must be a familiar refrain, Daly's contestations by documentary evidence triggered Justin's burden to provide documentary evidence controverting Daly's declaration. *See Anderson*, 807 P.2d at 826–27. Justin did not submit opposing affidavits or declarations. Nor did he verify his allegations on the record. This means the district court could only look to the complaint's uncontroverted allegations to assess jurisdiction. Justin's only material uncontroverted allegations against Daly are that she is a friend of Tiffani and the Phillipses and that she posted a message that identified Tiffani as a domestic abuse victim.

¶109 Justin contends that Daly's refutations by declaration are "unavailing and should be rejected" because her post claiming "Tiffani was the 'victim of abuse' . . . infer[entially] accuses Justin of domestic violence." Justin misses the mark. The relevant question for jurisdiction is whether Daly had minimum contacts with Utah as a member of a conspiracy such that she could have reasonably anticipated that a Utah court might exercise jurisdiction over her. If Justin had come forward with evidence that Daly had conspired with the other defendants to defame him, there might have been a dispute as to whether he was the subject of the post such that it could be considered a step to further the conspiracy. In the absence of evidence that Daly joined a conspiracy, whether

Daly's post inferentially accused Justin of domestic violence has little value in the jurisdictional calculation.

¶110 Justin's uncontroverted allegations failed to make a prima facie case of the district court's jurisdiction over Daly. It was error for the court to conclude that it could assert jurisdiction over Daly under a conspiracy theory.

### D. Marco Majors

¶111 Justin alleged, on information and belief, that Teal Marie Deegan "reached an explicit or implicit meeting of the minds with other [d]efendants in this case, in particular . . . Marco Majors." Justin asserted that the object of the conspiracy was "to defame [Justin] and place him in a false light and cause him emotional distress by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death."

¶112 Justin also alleged that Majors reposted a message to a social media site that stated, "Be Strong For My Cousin Tiffani . . . DV Abuse Is Very Real." Justin further alleged that Majors reposted:

> We will not stop until we seek justice for Tiffani! Stop domestic abuse . . . if you know someone that is in an abusive relationship, please reach out to them and offer help! . . . Tiffani was so loved by many, and without a doubt will [sic] keep fighting for her.

Justin contends that these posts are evidence of Majors's participation in a conspiracy to defame him.

¶113 Majors's declaration admitted that he attended Tiffani's funeral. But Majors's declaration also maintained that he "did not 'combine' or meet with any other person or group of people at Tiffani's funeral to discuss a mutual intention to damage Justin's reputation or to publicize unfounded accusations that he had committed domestic violence against Tiffani and was responsible for Tiffani's death."

¶114 The district court held that the complaint's allegations "are enough under these facts to deny, right or wrong, [Majors's] motion as to conspiracy [jurisdiction]." And the court's written order concluded that "it does not have specific personal jurisdiction over [] Majors under Utah Code [] § 78B-3-205 but [it] does have

specific personal jurisdiction over [] Majors based on a conspiracy theory of personal jurisdiction."

¶115 As with the other appellants, Majors's declaration contesting the jurisdictional facts triggered Justin's burden to provide evidence controverting Majors's declaration. *See Anderson*, 807 P.2d at 826–27. Justin failed to submit a counter-declaration to the district court. This means there was no dispute about the jurisdictional facts concerning Majors. Majors's refutations controlled where they specifically contradicted Justin's allegations against him.

¶116 The only allegations that the district court could consider are that Majors attended Tiffani's funeral and posted to social media the messages we outlined above. These factual allegations, even after making all reasonable inferences favorable to Justin, do not establish a prima facie case of jurisdiction under a conspiracy theory. The district court erred when it denied Majors's motion to dismiss.

*E. Nancy Morgan*

¶117 Justin alleged, on information and belief, that Traci and other defendants "reached an explicit or implicit meeting of the minds" with Morgan to defame Justin and "place him in a false light by publicizing unfounded accusations and statements implying that he had committed domestic violence" against Tiffani and was responsible for her death.

¶118 Justin also alleged that after the funeral, Morgan reposted:

> We will not stop until we seek justice for Tiffani! Stop domestic abuse . . . if you know someone that is in an abusive relationship, please reach out to them and offer help! . . . Tiffani was so loved by many, and without a doubt will [sic] keep fighting for her.

¶119 Morgan's declaration stated, "I have not conspired with the other [d]efendants in this case to convince or persuade others that [] Justin [] had committed domestic violence against or was culpable for the death of Tiffani." It went on to state,

> I did not meet with the other [d]efendants or agree to spread word in . . . [Justin's] community and on social media that Tiffani [] was a victim of domestic violence, that . . . [Justin] committed domestic

29

violence against [Tiffani], and that . . . [Justin] was responsible for [Tiffani's] death.

¶120 The district court concluded that, based on Morgan's post and the use of the word "we," there was "an inference that would lead the [c]ourt [to believe] that there was a conspiracy," and that Morgan "could have reasonably anticipated that her co[-]conspirators' actions would connect the conspiracy to [Utah]." The court ruled that there was "no specific jurisdiction as to [] Morgan, but there is jurisdiction under a co[-]conspiracy theory."

¶121 Like the conspiracy jurisdiction appellants above, Morgan's declaration prompted Justin's burden to provide evidence controverting Morgan's declaration. *See Anderson*, 807 P.2d at 826–27. And Justin's identical lack of response ends in the same result. Without a counter-declaration from Justin, the refutations made by Morgan's declaration whittle down Justin's allegations to a point where they are insufficient to establish a prima facie showing of jurisdiction under a civil conspiracy theory.

¶122 Justin's uncontroverted allegations against Morgan are that she is related to Tiffani and the Phillipses, she made the social media post referenced above, and she commented on a social media post about Tiffani, stating "[w]e will not rest until we have justice for our Tiffani." As with the other conspiracy jurisdiction appellants, this is insufficient to establish that Morgan is subject to jurisdiction in Utah under a conspiracy theory.

¶123 The district court erred when it denied Morgan's motion to dismiss.

*F. Amanda Seymore*

¶124 Justin alleged that close to the day of Tiffani's funeral, Seymore wrote on Facebook:

I still can not [sic] and will not accept this going without Tiff's voice being HEARD. If you haven't called yet, call. If you have called, call again. And again. For her families [sic] sake, for her children's sake.[] SPEAK for Tiffani. Detective Dove was "off duty" so continued on dispatch, got to chiefs voicemail and finally spoke to lieutenant Page possibly Paige, didn't confirm spelling and can't find his standing in Utah after a deep long search.[] . . .

Speak up, speak out. The case is still open for a reason!!! Utah police department- (435) 986-1515, press 1 for non emergency dispatch and hold for a dispatcher, then ask for Detective Dove for Lieutenant Page/Paige []. Any voice heard is a voice worth hearing. They need feedback, they need you!!!

¶125 Justin alleged that Seymore could only have known about the detective by contacting a defendant related to Tiffani. Justin also alleged that "Seymore engaged in a discussion [via Facebook comments] with" defendants who have now been dismissed, "celebrating the effect their collective posts were having on . . . [Justin's] reputation." Justin pointed to a reply Seymore made to a comment where she stated, "They're [sic] reputation is not worth Tiffani's life."

¶126 Finally, Justin alleged

Upon information and belief, Amanda Jean Seymore reached an explicit or implicit meeting of the minds with the other [d]efendants in this case, in particular[,] [d]efendants Traci Phillips [and] Ashley Phillips[,] . . . to defame [Justin] and place him in a false light and intentionally cause him emotional distress by publicizing unfounded accusations that he had committed domestic violence against [Tiffani] and was responsible for her death.

¶127 Seymore's declaration stated, "I did not attend Tiffani['s] [] funeral." Her verified reply averred that "Seymore has not had a meeting of the minds of any kind, implicit or explicit, with any of the other [d]efendants in this matter to act together in any manner whatsoever. . . . and she certainly has not conspired with any other [d]efendant to attempt to harm [Justin]."

¶128 The district court denied Seymore's motion, stating that the inferences that the court "believes are reasonable under the facts and arguments made supports" the denial of the motion to dismiss. The court found "that there is enough evidence to get over the initial hump to find that there is conspiracy theory jurisdiction."

¶129 Justin asserts that Seymore's Facebook comments "implicitly acknowledge[d] membership and participation with the group by simply responding that Justin's reputation (the target of the conspiracy) was not worth Tiffani's life." He further contends

that Seymore's post directing people to contact Detective Dove—who, according to Justin, was the Utah detective investigating Tiffani's death—is evidence that Seymore was in a conspiracy with the Phillipses. Justin specifically argues that Seymore's post shows "she had information that would only be privy to a family-member defendant," implying "that she knew and spoke with family-member Co-Conspirators that are masterminds of the conspiracy."

¶130 Because Seymore specifically controverted Justin's allegations with documentary evidence—a declaration attached to her motion to dismiss and her verified reply to the motion to dismiss—Justin needed to supply his own evidence to create a dispute. *See Anderson*, 807 P.2d at 826–27; *supra* ¶ 41 n.4 (explaining why verified replies can be relied upon like a declaration). Justin failed to supply a declaration, and he declined to verify his complaint on the record. *See supra* ¶ 42–43. The court should not have considered any of Justin's allegations that were specifically contradicted by Seymore's declaration and verified reply.

¶131 This left only allegations that Seymore is a friend of Tiffani's and other appellants, engaged in a public Facebook comment conversation about Justin's family, and posted to social media asking people to call a Utah detective who Justin asserts was investigating Tiffani's death and that Seymore could only have learned of the detective from a defendant related to Tiffani.

¶132 As with the other conspiracy jurisdiction appellants, this was insufficient to assert jurisdiction. *Raser* requires that a plaintiff demonstrate, among other things, that the defendant entered into a conspiracy and the defendant could have reasonably anticipated that her co-conspirator's actions would connect the conspiracy to Utah such that she could expect to defend herself in that forum. 2019 UT 44, ¶ 85. After Seymore's declaration refuted Justin's allegations, there existed insufficient evidence to permit the district court to conclude, for the purposes of personal jurisdiction, that Seymore entered into a conspiracy to harm Justin's reputation. The district court erred when it denied her motion to dismiss.

## CONCLUSION

¶133 Traci and Ashley Phillips sought interlocutory review, arguing that the district court improperly concluded that it had personal jurisdiction over them under a conspiracy theory of jurisdiction. We granted review only to discover that the district

court never reached that question with respect to them. The court instead concluded that Traci's and Ashley's own contacts with Utah gave rise to specific personal jurisdiction. Because Traci and Ashley did not seek review of the question on which the district court ruled against them, we dismiss their petitions as improvidently granted. We offer no opinion about the district court's assertion of personal jurisdiction over them.

¶134 The district court erred when it determined that Breinholt, Cerchiai, Daly, Majors, Morgan, and Seymore are subject to jurisdiction in Utah under a conspiracy theory of jurisdiction. We reverse the denial of their respective motions to dismiss and remand to the district court.[11]

---

[11] We note that Justin asked the district court to permit limited jurisdictional discovery. In his appellate briefing, Justin argued that if we ruled against him, we should order the district court to permit that jurisdictional discovery. We also note that some defendants moved for a dismissal with prejudice and others without. *See supra* ¶ 8 n.2. "The district court is entrusted with broad discretion in dealing with discovery matters." *In re Discipline of Pendleton*, 2000 UT 77, ¶ 38, 11 P.3d 284. This opinion does not foreclose an argument from Justin that he should be permitted jurisdictional discovery. Nor does it prevent a defendant from arguing that the district court should enter a dismissal with prejudice.